IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JUSTIN STALLBAUMER, for himself and on behalf of a putative class of similarly situated persons, )<br><br>Plaintiffs, )<br><br>v. )<br><br>NEXTERA ENERGY INC. of Florida, NEXTERA ENERGY CAPITAL HOLDINGS, INC. of Florida, and the following Delaware organizations: NEXTERA ENERGY RESOURCES LLC (hereinafter "NEER"), NEXTERA ENERGY CONSTRUCTORS LLC, NEXTERA ENERGY OPERATING SERVICES LLC, NEXTERA ENERGY PROJECT MANAGEMENT LLC, SOLDIER CREEK WIND LLC, and JANE DOE NEXTERA SUBSIDIARIES 1-5, )<br><br>Defendants. ) | **CIVIL ACTION**<br>**CASE NO.**_____<br><br>COMPLAINT -- CLASS ACTION<br>JURY DEMAND IN TOPEKA, KS |

**COMPLAINT**

Plaintiff Justin Stallbaumer, on behalf of himself and a class of similarly situated persons, hereby brings this cause of action against Defendants NEXTERA ENERGY, INC., NEXTERA ENERGY CAPITAL HOLDINGS, INC., NEXTERA ENERGY RESOURCES LLC (hereinafter "NEER"), NEXTERA ENERGY CONSTRUCTORS LLC, NEXTERA ENERGY OPERATING SERVICES LLC, NEXTERA ENERGY PROJECT MANAGEMENT LLC, SOLDIER CREEK WIND LLC, and JANE DOE NEXTERA SUBSIDIARIES 1-5, and alleges the following upon personal knowledge, information and belief.

**JURISDICTION, VENUE, AND PARTIES**

1.      Venue and jurisdiction are proper in this Court pursuant to 28 U.S.C. § 1332(a) based on complete diversity of citizenship between Plaintiff and Defendants and the predominant issues pertain to real property in this jurisdiction as well as federal question jurisdiction pursuant to 18 U.S.C. § 1961 *et seq*.

2.      This Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) *et seq*., because this case is a putative class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; there are greater than 100 putative class members; at least one putative class member is a citizen of a state other than Defendant's states of citizenship; and none of the exceptions under subsection 1332(d) apply in this matter.

3.      Plaintiff is a citizen of Kansas in Nemaha County and owns a 160 acre farmstead with U.S. postal service address of 1023 52nd Road, Corning, Kansas 66417, in Nemaha County, Kansas (hereinafter "farmstead" or "Stallbaumer Farmstead") that adjoins land on which Defendants have constructed large industrial wind turbine tower facilities.  The farmstead is less than two miles from Corning, Kansas city limits.

4.      Defendant NextEra Energy, Inc., is a for-profit corporation incorporated under the laws of Florida and having its principal place of business in the state of Florida. Defendant is engaged in power generating activities on a worldwide basis, to include other locations within the United States. They are the world's largest wind power generating corporation.

5.      Defendant NextEra Energy Capital Holdings, Inc. is a for-profit corporation incorporated under the laws of Florida having its principal place of business in Florida.

6.      The following Defendants, NextEra Energy Resources LLC (NEER), NextEra

2

Energy Constructors LLC, NextEra Energy Operating Services LLC, NextEra Energy Project Management LLC, Soldier Creek Wind LLC and other unnamed subsidiaries, are organized under the laws of Delaware and are substantially controlled by and share key executive officers, decision-making processes and personnel, the same corporate headquarters offices and facilities, shared work processes, and same exact address with the two parent corporations listed in paras. 4 and 5, herein.

7.      The array of Defendant subsidiaries and affiliates form the same joint venture and common enterprise related to Plaintiff's and the putative class' claims.

8.      All Defendants are organized or incorporated under the laws of either Florida or Delaware and all Defendants have their principal place of business at the exact same corporate building and address at 700 Universe Boulevard, Juno Beach, Florida 33408 for purposes of jurisdiction under 28 U.S.C. § 1332(d)(10).

9.      Defendant NextEra Energy, Inc., is the parent corporation to all other listed Defendants but also jointly, severally and actively participated in approval, development and the decision to develop at that location, oversight, ratification, direction, and/or supervision vis-à-vis other Defendants' actions related to the claims in this case that continue to harm Plaintiff.  This Defendant was jointly and severally involved in all acts alleged against other Defendants.

10.     Defendant NextEra Energy Capital Holdings, Inc. is a parent financing and economic backing company to all other listed Defendants and jointly and severally participated in financing and economic activities directly and/or as part of a joint venture with other Defendants related to the claims for damages and/or harm against Plaintiff.  This Defendant was jointly and severally involved in all acts alleged against other Defendants.

11.     None of the Defendants have members that are citizens of Kansas.  All Defendants, to include the LLC defendant submembers, are either citizens of Florida, California, or New York.  Therefore complete diversity of citizenship exists in this case between all Defendants and all Plaintiffs.

a.      NextEra Energy Resources LLC (NEER) operates as an action arm of the parent corporations described in paras. 4 and 5 providing primary oversight and an action conduit by which to direct activities throughout the entire NextEra Defendants joint venture and enterprise consisting of hundreds of subsidiaries.  It is heavily involved in all aspects of development for a new industrial wind turbine array like the massive Soldier Creek Wind LLC Project (hereinafter "the Project") in Nemaha County, Kansas at issue in this case and was directly involved both in and out of Kansas with all aspects to include but not be limited to preparation, development, the decision to develop at that location, finance, construction, compliance, regulatory and legal, public interface and communications as well as follow-on operations to include but not be limited to all aspects surrounding the claims in this case.  NEER was jointly and severally involved in all acts alleged against other Defendants.

b.      NextEra Energy Constructors LLC is registered as a foreign corporation in Kansas for the Project and based on its name alone it is reasonably certain to have been involved with aspects of the siting, approval, regulatory and legal, quality assurance, placement, and construction related to the claims in this case.  This Defendant was jointly and severally involved in all acts alleged against other Defendants.

c.      NextEra Energy Operating Services LLC is registered as a foreign corporation in

Kansas for the Project and based on its name alone it is reasonably certain to have been involved with aspects of the siting, approval, regulatory and legal, quality assurance, and other activity concerning the development and current operations of turbine towers related to the claims in this case. This Defendant was jointly and severally involved in all acts alleged against other Defendants.

d.      NextEra Energy Project Management LLC is registered as a foreign corporation in Kansas for the Project and based on its name alone it is reasonably certain to have been involved with aspects of the siting, approval, quality assurance, and other activity concerning the development and current operations of turbine towers related to the claims in this case. This Defendant was jointly and severally involved in all acts alleged against other Defendants.

e.      Soldier Creek Wind LLC is the local subsidiary in the overall enterprise that has been involved with every aspect of the Project to include but not be limited to its development, planning, siting, finance, current operations, regulatory and legal, construction and compliance, public interface among many other activities related to the claims in this case. This Defendant was jointly and severally involved in all acts alleged against other Defendants.

12.      The array of Defendant subsidiaries and affiliates form the same joint venture and common enterprise related to Plaintiff's claims and render them jointly and severally liable for any and all damages and/or harm alleged in this Complaint. All information about the Defendants, their acts, and their conduct in this case is in the exclusive knowledge of Defendants.

13.     Since Defendant LLCs do not have members sharing the same citizenship as Plaintiff or putative class members, this Court has jurisdiction under 28 U.S.C. § 1332(d).

ALLEGATIONS COMMON TO ALL COUNTS

14.     The NextEra Defendants[1] developed, constructed, engaged in related regulatory, legal, and public interface matters, and continue to operate the Project with its massive tower array covering the southern half of Nemaha County and consisting of over 130+ independent industrial generation plants on colossal 495-foot towers having over 400 foot rotating arms in close proximity to Plaintiff's property.

15.     As the largest producer of wind generation in the world, the NextEra Defendants had robust knowledge and experience with the devastation these developments and devices cause to their neighbors.  In other localities where NextEra had put in these "wind farms" it had been met by numerous and substantial complaints and accusations of serious disturbances from these huge structures to both person and property, if not massive community opposition that squashed the projects before ever being constructed.  Multiple lawsuits have been filed against the Defendants by angry neighbors once they realized the extent to which NextEra's huge structures monumentally transformed and negatively affected the use and enjoyment of neighbors' property.  Those known annoyances and interferences having been experienced by Plaintiff include but are not limited to, *inter alia*, the following: The 120+ towers have three rotating 260 foot long blades and are topped with powerful navigational bright red aviation strobe lights firing in sync each few seconds throughout the entire nighttime hours that can be seen for miles across entire counties.  These wind tower fields stretch out for multiple miles in this case blanketing the

---

[1] Plaintiffs include all named Defendants and their agents and representatives in whatever capacity under the joint enterprise referenced collectively as "NextEra Defendants" or "Defendants."

southern half of an entire county, Nemaha County, Kansas.  They present an imposing and intruding disturbance and generate significant and unnatural amounts of noise and strobe light flashing at night that is especially agitating to neighbors in the normal, bird-chirping quiet and normally starlit night sky of rural Kansas. The noises are diverse in nature but also continue, often with 24/7 consistency, for days on end with each tower generating the sound of a passenger jet passing overhead that never moves out of earshot or, at other times, with deep thumping regularity akin to an approaching helicopter that never seems to land or depart the area. The sound can be constant for days, depending on the weather, and experienced from miles away. These experiences are particularly acute and can have devastating effects by those living in the vicinity of these mammoth structures.  Other devastating effects include sunlight "flicker" with the rising and the lowering of bright sunlight each day rhythmically passing through the monstrous blades inducing an agitating and disturbing strobe light effect on people and property in the vicinity, and the unavoidable and ruinous blight of these unnatural mountainous structures dominating, obstructing, and transforming the surrounding view of the landscape.  It can also involve the anguish of realization that the devastating and sudden transformation of the "non-participating" neighbors' surrounding land caused by Defendants' massive alteration to the entire region without their consent has forever degraded their family homesteads, farms, and surrounding community in what seemed like an instant but will last for a lifetime or even generations.  These devices and developments are so disturbing and annoying that they often render the surrounding areas such that most people would choose not to work or live in them.

16.     Plaintiff has specifically suffered a loss of use of certain parts of his family's home such that they almost entirely have stopped the use of their back patio area where they

previously entertained guests and would spend many nice evenings as a family due to the imposing blight, noise, and strobing red lights of Defendants' massive towers intruding upon them from adjoining properties; they almost always now have to shut the front picture window black out curtains in their family room during evening and hours of darkness in the front of their house due to the array of multiple red strobing lights from Defendants' multiple huge turbine towers arrayed in front of their house on adjoining properties, they previously were able to keep their blackout window shades open at night to be able to wake up to morning sunlight in certain seasons but have to close them each night now due to the intrusive red strobing flashes that can be seen through their bedroom windows during all hours of darkness from Defendants' massive array of turbine towers surrounding their home; and these dozens of towers in the surrounding few miles completely encircle their home and are visible now out every window on all sides of their home intruding into their house when the blackout shades are not drawn during evening and hours of darkness.

17.    Despite its knowledge of the monumental negative effect that their "wind farm" developments and their wind towers can have, and have had, on local citizens and family homesteads, farms, and surrounding communities, Defendants have chosen to put them near non-participating properties[2], family homesteads, and farms anyway in a manner that causes and undue interference with their quiet right of enjoyment of property.

18.    Rather than acquire the effected properties at market value or site their massive wind tower projects in unpopulated areas, NextEra Defendants set out to unilaterally shift costs

---

[2] The term "non-participating" landowner or citizen refers to all those citizens of southern Nemaha County, Kansas who did not sign a land use agreement with Defendants related to the Project.

and increase profits by ignoring known interference with non-participating neighbors like Plaintiff's quiet right of enjoyment of their property.

19.     When reasonable limitations were sought to protect these non-participating neighbors, Defendants sought to intimidate, deceive, trick, mislead, and otherwise unlawfully interfere and block Plaintiff's and those similarly situated ability to implement or enjoy the protection and reasonable limitations and protections for their benefit by the use of unlawful, harassing, or otherwise illegal or unconscionable actions and tactics against Plaintiff and those similarly situated or their agents or representatives in positions to look out for Plaintiff's or those similarly situated rights and interests.

20.     One such example involves the unlawful bribery of a Corning, Kansas elected city council member in order to intimidate, pressure, block, or otherwise interfere with his obligations and official duties and conduct related to efforts by the Corning City Council and its subordinate committees to institute reasonable measures to protect the rights and interests of non-participating citizens and property owners in and around Corning, Kansas related to the Project.

21.     Defendants have also created a huge danger in the middle of tornado alley with the dozens of 250 foot long potential flying missiles should a tornado hit any of the 50+ towers clustered within what would have been a three-mile exclusion zone around Corning, Kansas, that endanger Plaintiff and the putative class even within their homes and shelters during a tornado outbreak in the area.

22.     Defendants have sited and placed towers too close, and in too high of concentrations, to non-participating properties creating a known and serious nuisance and have intimidated or otherwise unlawful interfered with anyone who dared to challenge their bullying

and deception.  NextEra Defendants, in fact, are not limited to intimidating and silencing lone

individual landowner opponents but have resorted to threatening whole rural communities with

bankruptcy through litigation, and have acted on such threats against counties and municipal

entities, when they attempt to place any reasonable limitations on the size, scope, and massive

reach of these large-scale and radically transformative industrial wind tower construction

projects.

23.     To further effectuate its plan to disregard and shift its costs to others, Defendants,

severally and jointly, concealed from, and misled, the public and local officials in Nemaha

County that all landowners relied on to represent and protect their interests and concerns

particularly those of local, non-participating landowners.  Defendants represented that they

would observe a minimum 600-foot set back between their towers and non-participating

landowner property lines and a minimum 3000-foot set back from dwellings when developing

the Project.  Instead, they have flagrantly violated their commitments to observe these setbacks

with impunity and hostility towards those attempting to hold them accountable.

24.     NextEra Defendants also made materially false representations regarding these

minimum set backs and non-compliant set back circumstances that were relied upon by Nemaha

County Board of Supervisors and/or their agents and representatives (hereinafter "the Board")

related to the Development Agreement dated February 26, 2020.[3]  This is evident by public

comments by Board members and their agents and representatives after that date indicating that

they understood that setbacks from all towers in the Project would be no less than 3000 feet from

all non-participating dwellings and no less than 600 feet from all non-participating property

_____

[3]See heading Soldier Creek Wind Farm, "Term Sheet" paragraph 2(a) at http://ks-nemaha.manatron.com.

lines.  In addition, Mr. James Neeld, private attorney representing the Board in negotiations with Defendants, stated in a public setting that Defendants represented to the Board that only seven non-participating properties were out of compliance with these agreed setbacks prior to concluding the agreement on February 26, 2020.  Neeld also stated that all seven of those landowners had been offered an opportunity to negotiate acceptable settlement terms by Defendants concerning the lack of compliance with the agreed setbacks.  More importantly, Defendants represented to the Board that all such non-compliant set back situations had been resolved through some kind of settlement agreement with the landowners of affected properties at the non-compliant set back sites.  These acts are consistent with the unlawful tactics and actions of Defendants undertaken in their bum rush of county and municipal officials to prevent them from carrying out the clear will of the people to place reasonable limitations and restrictions on the Project in Nemaha County, Kansas

25.    Defendants have made enormous profits by simply shifting their acquisition and other costs to ordinary people by deceptively concealing and/or misrepresenting material information to local officials and citizens, selectively disregarding local setback requirements and known nuisances, and even violating Kansas criminal laws that serve as predicates for Racketeering Influence and Corrupt Organizations (hereinafter "RICO") violations when they intimidated, unlawfully blocked and/or otherwise interfered with official municipal proceedings to include unlawfully thwarting official proceedings concerning a three-mile turbine tower exclusion zone around Corning, Kansas city limits in a mad rush to build the towers, and/or blunt reasonable limitations or restrictions on them, as quickly as possible to render their clear nuisances and RICO violations a *fait de complis*, which also served to maximize profits.  These

11

actions have resulted in an intrusion upon or otherwise substantial interference with Plaintiff's and the putative class' ability to use and enjoy their property has caused substantial harm.

26.     Defendants knew that adjacent non-participating landowners and residents would suffer nuisances as a result of their massive industrial wind turbine tower construction could not be bothered with whether it would cause a huge nuisance, violated the law or if it was wildly out of line with the terms they misleadingly feigned agreement and an intent to comply.  This is consistent with other deceptive and unconscionable conduct by Defendants and their partners in the development and operation of this massive Project.

27.     Defendants, jointly and severally, had actual knowledge of the full extent and nature of the nuisance they were creating but intentionally and deliberately created it anyway.

28.     Defendants utilized deceptive business practices related to a pattern of misleading inducements, material concealment and other deceptive and unconscionable practices to include involvement in what amounts to intimidation and intentional disruption and interference with official proceedings of the Corning City Council, even extortion/bribery of an elected Council member by threatening to fire him unless he immediately halted all opposition, to include official council voting and "have no position on the Project", in opposition to the Project.

29.     Defendants have developed a method it is employing on a nationwide basis to disregard the rights, and to shift development costs, onto local homeowners and farmsteads by concealing the known effects of these towers, misrepresenting their effect to unknowledgeable local authorities and citizens, then just shoving the nuisance down the throats of the "non-participants," whether in violation of local agreements and law, to include criminal law, and punishing any who stand up to them.

30.     Plaintiff re-alleges and incorporates by reference all other paragraphs of this Complaint as if set forth herein in their entirety.

31.     Plaintiff's theories for recovery are primarily based on a very recent opinion of Senior Judge John Lungrstrum in *Macias v. BNSF Ry. Co*., Case No. 19-cv-2305-JWL (D. Kan., Decided June 25, 2020) in which claims for nuisance are differentiated as "intentional private nuisance" and "private nuisance based on negligence."  As such, Plaintiff has organized claims along these distinct lines. Based upon the facts as alleged herein, Defendants well knew that they were not simply creating a nuisance but one so severe as to cause the neighboring farms and residences to lose the character of their property rendering unsuitable for uses such as residences and family farms. Despite the foregoing, Defendants deliberately and intentionally created this massive nuisance in total disregard of the rights of local residents.

32.     Plaintiff seeks damages in excess of $75,000.00 for the substantial and unreasonable interference upon his land and ongoing nuisance and/or *per se* nuisance created by NextEra Defendants' intentional acts related to the construction and operation of colossal 495-foot industrial wind turbine towers, and in such large numbers and clusters, nearby to non-participating properties.

33.     Defendants' conduct in proceeding to build the tower so close to Plaintiff's dwelling was in contravention of their duty to avoid such harm and interference with non-participating landowners land use rights and quiet rights of enjoyment of land and were willful and wanton in nature causing harm to Plaintiff.

34.     In the alternative, Plaintiff seeks damages in excess of $75,000.00 for the substantial and unreasonable interference upon his land and ongoing private nuisance based on

negligent acts and omissions by NextEra Defendants related to the planning, construction and operation of colossal 495-foot industrial wind turbine towers on adjoining property along the western fence line of Plaintiff's property.  Defendants had a duty of care when planning, constructing, and operating the giant wind towers in question to avoid creating a nuisance by, among other duties, siting and operating them so as not to create undue interference and annoyance to surrounding, non-participating, landowners and residents, and failed in their duty causing nuisances that have and continue to harm Plaintiff and the putative class.

INVERSE CONDEMNATION UNDER GOVERNMENT AUTHORITY

35.     The Project the Defendants erected was a public works project in that it was intended to supply electric power to Kansas and elsewhere, in particular to publicly-funded institutions of higher learning at a highly discounted rate (University of Kansas, Kansas State University, etc.). In order to do the project, it was essential to resolve certain local land use and county permitting issues for use of land, roadways, and other facilities that were ordinarily prohibited or otherwise restricted because of this kind of Project's annoying effect (nuisances) on neighbors or a need to publicly regulate the development for other public policy reasons. In order to secure the ability to build the Project and obtain requisite approvals that the Defendants needed to obtain (variances, changes in ordinances, permitting, use, and construction of roadways, bridges, etc.) Defendants engaged in the following actions:

36.     NextEra Defendants intentionally, recklessly, negligently, and otherwise unlawfully and/or culpably interfered with, misled, and corrupted the proceedings of both county and municipal officials and official proceedings related to the Project.  In this case, NextEra

Defendants were also responsible for affirmatively erecting the turbine tower in the locations that they knew or should have known were in a non-compliant set back location, or that were due to unlawful acts vis-à-vis public officials, or would otherwise create a known nuisance to surrounding landowners and residents alike. NextEra Defendants' are liable for the inverse condemnation that resulted from their intentional, reckless, negligent, and/or otherwise unlawful actions that resulted from events proximately caused and undertaken under color of government authority.

37.    The placement of turbine towers, and separately the size and scope of the massive Project covering such a large swath of Nemaha County, Kansas, constitutes a takings under the Fifth Amendment of the Constitution of the United States and/or Kansas law.

38.    K.S.A. § 26-513(a) states: "(a) Necessity. Private property shall not be taken or damaged for public use without just compensation." Based on the foregoing, the taking or alternatively damage necessarily caused by the construction of this massive project close to Plaintiff's property is a compensable taking under law.

39.    Defendants' direct actions in causing this takings to occur render them liable because they intentionally, recklessly, negligently, and/or otherwise unlawfully caused the government to "agree" to or not block or otherwise place limitations on, and thus authorize, these takings via the corrupted Corning City Council vote that failed by one vote to implement a three-mile turbine tower exclusion zone around that municipality or the Development Agreement with Nemaha County under false pretenses and without just compensation.

CIVIL CONSPIRACY (as to all Defendants).

15

40.     Plaintiff incorporates by reference the allegations set forth above as if fully set forth herein.

41.     Upon information and belief, Defendants and their agents, representatives, partners, joint venture participants, and/or co-conspirators civilly conspired, pursuant to 18 U.S.C. § 1961 *et seq*., to intentionally, improperly and wrongfully interfere, block, suppress, and/or otherwise obstruct official proceedings and activities of municipal bodies in both Corning, Kansas and Nemaha County in order to prevent legitimate, beneficial, protective and/or otherwise lawful restrictions and limitations on their profits related to the development and operation of the Project.

42.     Defendants entered into a joint venture, partnership arrangement with then Westar Energy, now Evergy, for the purpose of exploiting and transporting the massive industrial wind turbine tower electrical production capacity generated by the Project.

43.     After this joint venture, partnership arrangement was initiated between Defendants and Westar Energy and six months prior to the expected vote in Corning, Kansas City Council concerning the three-mile turbine tower exclusion zone being studied and considered, Westar Energy hired voting, elected official of the Corning City Council and proponent of a municipal ordinance imposing a three-mile exclusion zone on turbines surrounding the City as a full time employee in a desirable and lucrative position at the Topeka office.

44.     Approximately, a week prior to the final vote by the Corning City Council on which this now-Westar Energy employee would participate in a close City Council vote to impose a three-mile exclusion on Defendants' turbine towers surrounding the City, Westar

16

Energy summoned the employee and elected Corning City Councilman to the front office for a meeting with senior corporate officers and representatives.  At that meeting in approximately October 2019, the senior corporate officers and representatives demanded that the elected Corning City Councilman immediately take down his online social media information in opposition to the joint venture/partnership related to the Soldier Creek Wind LLC wind turbine development in Nemaha County, Kansas, the Project, and have no opinion or position, basically a radically neutral public stance and voting position on the Project, going forward if he wanted to enjoy continued employment with Westar Energy.  In other words, the Corning City Council elected official who Westar Energy had just hired approximately six months prior was informed that in order to continue to receive his salary and continue with his employment with Westar he must NOT vote the way he clearly wanted to vote and was convicted was the right and just way to vote in official proceedings in the Corning City Council related to the Project, to include a threat to NOT vote in favor of the three-mile turbine exclusion zone around Corning, and to immediately take down his social media information in order to continue being paid his salary and continue his employment with Westar Energy.

45.     Upon information and belief, by virtue of their actions, Defendants are jointly and severally liable for Plaintiff's and the putative class' damages as set forth herein, as co-conspirators.

46.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered damages in an amount to be proved at trial, but in any event, in excess of $75,000.00, exclusive of interest, fees and costs. The impact of such damages has been felt by Plaintiff in their state of residence, Kansas.

17

47.     Defendants are jointly and severally liable for such damages incurred by Plaintiff and each member of the putative class.

48.     WHEREFORE, Plaintiff and each member of the putative class each pray for:  A. Judgment, joint and several, against all Defendants, in an amount in an amount in excess of $75,000.00 each to be determined at trial, exclusive of interest, fees and costs; pre-and post-judgment interest as allowed by law, the costs of this action; punitive damages; and such other relief the Court deems just and proper.

CLASS CLAIMS

49.     Plaintiff hereby incorporates by reference all other paragraphs as if set forth herein in their entirety.

50.     Plaintiff and the following described members of a putative class in Nemaha County, Kansas have suffered the damages and harm herein described and consists of a class of similarly situated persons in excess of 100 persons.

51.     Defendants have developed a massive industrial wind turbine towers production array covering the southern half of Nemaha County, Kansas that in size, scope, nature, and placement of towers has created a large and unavoidable annoyance, interference and intrusion upon local non-participating landowners and residents without compensation or permission.

52.     **Class:  All owners of property and residents in Nemaha County, Kansas that have been adversely affected by Defendants' unlawful acts that illegitimately and unlawfully thwarted local municipal efforts to successfully institute a three-mile wind turbine tower exclusion zone from the city limits of Corning, Kansas and that have created**

18

**a nuisance to their land or residences.**

53.     The Class includes over one hundred individuals, making joinder impractical, satisfying the requirements of FRCP 23(a)(1).  NextEra Defendants indicate 361 local landowners in Nemaha County, Kansas are considered "participating" landowners. The exact size of the Class and the identities of the individual members thereof are ascertainable only through discovery of Defendants' records and other records outside the control of Plaintiff.

54.     The claims of Plaintiff are typical of the claims of all of the other members of the Class.  The claims of the Plaintiff and the Class are based on the same legal theories and arise from the same actions and practices of Defendants resulting in the same injury to the Plaintiff and the Class.  The Class has a well-defined community of interest.  The Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class.

55.     There are questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual Class members within the meaning of FRCP 23(a)(2) and 23(b)(2).

56.     Common questions of fact and law affecting members of the Class include, but are not limited to, the following: Whether Defendants', to include their agents' and representatives', conduct constitutes a nuisance to non-participating landowners and residents identified in the proposed class, constitutes a Racketeering Influence and Corrupt Organization (RICO) violation;

57.     Plaintiff will fairly and adequately represent and protect the interests of the Class.

58.     Plaintiff is not only a landowner squarely within the three-mile proposed

exclusion zone who would have been spared the devastating affects of this massive intrusion and annoyance of Defendants' Project but also served in an appointed role on the planning commission of the Corning, Kansas City Council to study and report on the very three-mile exclusion zone at issue in this case. To deny the putative Class of representation and require individuals to bring separate claims would be substantially prohibitive and will result in an ineffective and incomplete resolution of the issue.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

59.     Absent a class action, most class members would find the cost of litigating their interests to be prohibitive and likely not worth it.  Plaintiff and class counsel will zealously pursue the claims on behalf of the Class and have the resources to do so.  Plaintiff has no interest adverse to those of other Class members.

60.     Plaintiff's counsel does not have an interest adverse to those of other Class members.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray for the following relief:

A.     An order certifying the Class;

B.     An order appointing Plaintiff as class representative and his counsel as class counsel;

C.      A judgment for damages in excess of $5,000,000.00 in the aggregate for the

putative class and in excess of $75,000.00 for Plaintiff individually and all other relief

available in law and that this Court deems appropriate; Jury demand is hereby made in

Topeka, Kansas;

E.      Payment of Plaintiff's and the Class' costs and reasonable attorneys' fees and any

further relief the Court deems proper.

Dated: May 19, 2022                              Respectfully submitted,


_____
Blair Drazic, Esq. (CO No.39879)
Grand Junction, Colorado
Counsel for Plaintiff/Putative Class
*Pro Hac Vice to be filed*

_____s/James Renne_____
*James Renne, Esq.  (KS Bar No. 18078)*
*4201 Wilson Blvd., Suite 110521*
*Arlington, VA 22203*
*For Plaintiff and the Putative Class*