IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JUSTIN STALLBAUMER,

      Plaintiff,

      v.                           Case No.: 22-cv-04031-HLT-ADM

NEXTERA ENERGY RESOURCES,
LLC, et al.,

      Defendants.

## MEMORANDUM AND ORDER

    This case arises out of the construction of wind turbines in Kansas. Plaintiff is a property owner in Nemaha County, Kansas. Defendants are three entities that Plaintiff contends are responsible for constructing the wind farm near Plaintiff's property. Plaintiff asserts claims for nuisance, violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, and civil conspiracy. He also asserts class claims on behalf of others who suffered damages for which Defendants are liable. Defendants move to dismiss all claims on various grounds. Doc. 13.[1] For the reasons stated below, the motion is granted in part. The Court dismisses Plaintiff's RICO claim, civil conspiracy claim, and class claims as to all parties, and his nuisance claim against the two NextEra Defendants. Plaintiff's nuisance claim against Defendant Soldier Creek Wind LLC survives.

---

[1]  The motion to dismiss was filed before the local rule change regarding page limits. *See* D. Kan. Rule 7.1(d). Plaintiff's response brief was filed after the rule change. Doc. 19. It exceeds the page limit and includes a footnote recognizing the rule change but stating that it would not be feasible or fair to require Plaintiff to follow the revised rule. *See id.* at 1 n.2. The Court has received and granted many requests for extension of the page limit in cases where the briefing deadline straddled the rule change. No request was made here. The Court will nevertheless accept Plaintiff's response brief to keep this case progressing and because Defendants do not oppose it, *see* Doc. 21 at 1. Plaintiff is cautioned, however, that future unilateral determinations that local rules should not apply will not be well received and may result in filings being summarily stricken or sanctions being imposed.

I.      **BACKGROUND**[2]

A.      **The Parties**

Plaintiff owns a farm in Nemaha County, Kansas, less than two miles from the city of Corning, Kansas. Doc. 5 at ¶ 3. Plaintiff's farm is near land on which Defendants have constructed industrial wind turbines. *Id.* The wind turbines are part of a project known as the Soldier Creek Wind Project (the "Project"). *Id.* ¶ 4.

Defendants are NextEra Energy Resources LLC ("NEER"), NextEra Energy Project Management LLC ("NEPM"), and Soldier Creek Wind LLC ("Soldier Creek").[3] Defendants are engaged in power generating activities, including the Project. *Id.* ¶ 5.

Plaintiff alleges that "[Soldier Creek] and its Soldier Creek Wind Project" are "owned and operated" by NEER. *Id.* ¶ 6. "NEER is the 'higher up' authority from which NEPM and Soldier Creek and other subsidiaries and/or affiliates take direction and seek approval for significant decisions and actions related to the Project . . . ." *Id.* Plaintiff alleges that NEER negotiated the term sheet and development agreement for the Project and was recently fined $200,000 by Nemaha County for violation of the Project's road-use agreement. *Id.* Plaintiff alleges that a NEER employee has claimed to manage wind-development efforts in Kansas, including development of the Project, and has engaged in settlement negotiations with other landowners. *Id.* Plaintiff alleges that NEER and NEPM both "were heavily involved in all aspects of development for a new industrial wind turbine array like the massive Soldier Creed Wind LLC Project" and "were intimately involved in reviewing, directing, consulting on, and approving specific matters at the

---

[2]   The following facts are taken from the amended complaint (Doc. 5) and are assumed to be true for purposes of evaluating Defendants' motion to dismiss.

[3]   Plaintiff also sues five "Jane Doe NextEra Parent, Subsidiary, and/or Affiliate Entities." Neither party addresses these defendants and the Court does not consider them in the analysis.

core of Plaintiff's claims in this case." *Id.* Further, "NEER was also involved with all aspects of the siting, approval, quality assurance, regulatory and/or contractual compliance matters, and other activity concerning the development, location, construction, and current operations of turbine towers that continue to harm Plaintiff." *Id.*

NEPM "is a subsidiary in the tangle of the NextEra joint enterprise" and "was actively involved in Kansas with employees overseeing and directing all aspects of development, to include but not be limited to taking the lead in Kansas with Kansas citizens in executing land lease contracts for the Project . . . and construction, to include overseeing and placement of turbine towers for the Project. *Id.* ¶ 7. NEPM employees were also involved in settling disputes with other landowners and were taking direction from NEER employees. *Id.* ¶ 6.

Soldier Creek "is the local subsidiary in the overall enterprise that has been involved with every aspect of the Project to include but not be limited to its development, planning, siting, finance, current operations, construction and compliance, public interface among many other activities that continue to harm Plaintiff." *Id.* ¶ 8.

As to the relationship between Defendants, Plaintiff alleges that "NEER was at least clearly involved in a joint enterprise with NEPM and Soldier Creek on the development and operations of the Project and specifically related to core issues in this case, if not directly liable . . . and they are all openly coordinating and cooperating in their actions in the development and operations of the Soldier Creek Wind Project." *Id.* ¶ 6. Plaintiff alleges that Defendants all form the same joint enterprise and are all jointly and severally liable for any harm alleged. *Id.* ¶ 9.

B.    **The Claims**

1.    **Nuisance**

The first claim asserted is for nuisance. Plaintiff alleges that "Defendants developed, constructed, engaged in related regulatory, legal, and public interface matters, and continue to operate the Project with its massive tower array . . . in close proximity to Plaintiff's property." *Id.* ¶ 14. Several communities have opposed the presence of wind turbines. *See id.* ¶ 15. The amended complaint describes the alleged nuisance:

> The 130+ towers have three rotating approximately 250 foot long blades and are topped with powerful navigational bright red aviation strobe lights firing in sync each few seconds throughout the entire nighttime hours that can be seen for miles across entire counties. These wind tower fields stretch out for multiple miles in this case blanketing the southern half of an entire county, Nemaha County, Kansas. They present an imposing and intruding disturbance and generate significant and unnatural amounts of noise and strobe light flashing at night that has and continues to be especially agitating to PLAINTIFF when trying to use and enjoy his property in the normal, bird-chirping quiet and normally starlit night sky of rural Kansas. These annoyances, disturbances, and substantial interferences to PLAINTIFF while attempting to use and enjoy their property include noises that are diverse but also continue, often with 24/7 consistency, for days on end with each tower generating the sound of a passenger jet passing overhead that never moves out of earshot or, at other times, with deep thumping regularity akin to an approaching helicopter that never seems to land or depart the area. The sound can be constant for days, depending on the weather, and experienced from miles away. These experiences are particularly acute and can have devastating effects by those living in the vicinity of these mammoth structures. Other devastating effects that Plaintiff endures while trying to use and enjoy his property include sunlight "flicker" with the rising and the lowering of direct sunlight each day rhythmically passing through the monstrous blades inducing an agitating shadow strobing effect on people and property in the vicinity and contributing to, along with other intrusions, the unavoidable and ruinous blight caused by these unnatural mountainous structures that dominate, obstruct, and transform the surrounding view of the landscape. It also involves PLAINTIFF's anguish over the realization with each annoyance that the devastating and sudden transformation of the surrounding land

4

> caused by Defendants' massive alteration to the entire region without his consent has forever degraded his prized property passed down in his family for generations in what seemed like an instant but will last for a lifetime or even generations. These devices and developments are so disturbing and annoying that they often render the surrounding areas such that most people would choose not to work or live in them. Despite its knowledge of the monumental negative effects that their "wind farm" developments and their wind towers can have, and have had, on local citizens and family homesteads, farms, and surrounding communities, Defendants have chosen to put them near non-participating properties, family homesteads, and farms anyway in a manner that causes and undue interference with their quiet right of enjoyment of property.

*Id.* ¶ 18. Plaintiff experiences annoying or severe noise, light, or shadow distractions from the wind turbines about 85-90% of the time. *Id.* ¶ 19. This has caused Plaintiff to stop using the back patio of his home and requires him to keep windows shut with blackout shades at night. *Id.* ¶ 20. Plaintiff and his family fear that the wind turbines could be transformed into "dozens of 250 foot long potential flying missiles should a tornado hit any of the 50+ towers clustered within what would have been a three-mile exclusion zone around Corning, Kansas." *Id.* ¶ 21. This has "inhibited Plaintiff's ability to realize the full value and use as a homestead/farmstead without substantial annoyance, interference, loss of use and enjoyment, among other damages when trying to use the property as he would like—or sell the property—due to the Project's turbine towers." *Id.* ¶ 29.

Plaintiff alleges that Defendants placed towers too close and in too high concentration to non-participating properties. *Id.* ¶ 24. The amended complaint states that Defendants "set out to unilaterally shift costs and increase profits by ignoring known interference" with the quiet right of enjoyment of non-participating landowners. *Id.* ¶ 22. Plaintiff alleges that Defendants used harassing or intimidating tactics to avoid limitations on the size, scope, or location of wind turbines. *See id.* ¶ 24. According to Plaintiff, "Defendants—along with other integrated and fully coordinated subsidiaries and affiliates—severally and jointly, concealed from, and misled or

intimidated, the public and local officials in Nemaha County whom all landowners were relying on to represent and protect their interests and concerns particularly those of local, non-participating landowners," *id.* ¶ 25, and also "made materially false representations and/or withheld materially significant information," *id.* ¶ 26. Defendants instead "flagrantly violated their commitments to observe these setbacks with impunity and have demonstrated hostility towards those attempting to hold them accountable." *Id.* ¶ 25.[4]

### 2. Civil RICO

Plaintiff's second claim is a civil RICO claim. Plaintiff alleges that "NEER and/or NEPM created an enterprise in the form of Defendant Soldier Creek and/or the enterprise Soldier Creek Wind Project for the purpose of developing, building, and operating a 'wind farm' in Nemaha County." *Id.* ¶ 38. NEER and NEPM operated the Soldier Creek enterprise by engaging in predicate acts of racketeering. *Id.* ¶ 39. Specifically, NEER "made use of mail and wire communications in interstate commerce to falsely convince the residents and local authorities to believe its towers were a minor annoyance" and "engaged in fraud in misrepresenting the nature of [one-sided] adhesion contracts." *Id.* ¶ 40. Plaintiff alleges these acts violated "18 U.S.C. § 1341 and common fraud statutes." *Id.* Plaintiff also alleges that Westar Energy, "in a conspiracy with Defendants," threatened to fire a Corning city councilman from his position at Westar unless he refrained from voting in a way adverse to Defendants' interest or advocating against the Project.

---

[4] Plaintiff's nuisance claim includes a lengthy paragraph about criminal convictions related to the killing of eagles by wind turbines owned and operated by NEER at different locations. Doc. 5 at ¶ 16. One of the exhibits cited references the Soldier Creek project as a location at which an "Eagle Management Plan" will be implemented. *See* Doc. 5-4 at 2. The relevance of this is unclear, as the claims in this case do not appear to have anything to do with eagles or the criminal case, which was brought in Wyoming. The Court notes that in other cases brought by Plaintiff's counsel, a motion for "judicial notice" was filed regarding this information. *See Renne v. NextEra Energy, Inc.*, Case No. 21-cv-4032-HLT-ADM, Doc. 55 (D. Kan. June 3, 2022) (denying motion for judicial notice and rejecting the plaintiff's contention that "it is 'axiomatic' that if Defendants' subsidiary is willing to commit criminal violations related to eagle killings, then Defendants must also be willing to ignore their legal obligations in this case").

*Id.* ¶ 41.[5] The Corning city councilman eventually resigned and "Defendants and their allies were able to fill the open seat with a candidate more friendly to Defendants and the Soldier Creek Project." *Id.* ¶ 42. Plaintiff alleges these actions violated K.S.A. § 21-6001 (bribery) and K.S.A. § 21-5922 (interference with the conduct of public business through coercion or intimidation). *Id.*

### 3.    Civil Conspiracy

Plaintiff's third claim is for civil conspiracy under Kansas law. He alleges Defendants had a meeting of the minds on how to obtain their objective, they committed acts in furtherance of that objective, and had "a meeting of the minds and cooperated to engage in overt acts of intimidation, coercion, or deception against local officials, and/or local citizens," and "committed unlawful conduct actionable in tort and otherwise violated the law in an actionable manner and damages to Plaintiff and the putative class were the proximate result." *Id.* ¶¶ 46-51. Other than incorporating prior paragraphs, no additional facts are included as part of this claim.

### 4.    Class Claims

Plaintiff's amended complaint finally includes class claims. The class claims are based on Defendants' development of the Project. Plaintiff identifies two classes:

> Class: All owners of property and residents in Nemaha County, Kansas that have suffered harm or damages resulting from liable conduct of any Defendant based on claims made by Plaintiff herein.
>
> . . .
>
> Subclass: All owners of property and residents in Nemaha County, Kansas living within three miles of Corning, Kansas who have suffered harm or damages resulting from liable conduct of any Defendant based on claims made by Plaintiff herein.

---

[5]   The amended complaint states that Westar Energy summoned the elected official "to [a] meeting in the headquarters front office suites for Westar senior executives, to include the General Counsel and Director of Human Resources" and was "brow beat and threatened . . . with the termination and discontinuation of his lucrative and prestigious employment position, salary, and benefits with Westar Energy (now Evergy)." Doc. 5 at ¶ 41. Westar Energy is not a party to this case, and other than references to it being Defendants' "partner" and part of a "conspiracy," it is not clear how Defendants are responsible for actions taken by Westar Energy.

*Id.* ¶¶ 55-56. Plaintiff alleges there are common questions of law and fact affecting all class members in the form of "whether Defendants' to include their agents' and representatives' [sic] conduct constitutes a nuisance to non-participating landowners and residents identified in the proposed class and/or constitutes a [RICO] violation." *Id.* ¶ 60.

### C.     Related Litigation

This is the third case pending before the Court regarding the Project, all of which involve the same attorneys and similar issues. Like this case, the earlier cases sought to assert nuisance claims against Soldier Creek and various NextEra entities. The Court dismissed all NextEra entities from those cases, as well as all claims except the nuisance claims against Soldier Creek. *See Bloom v. NextEra Energy, Inc.*, 2022 WL 2918136 (D. Kan. 2022); *Renne v. NextEra Energy, Inc.*, 2022 WL 2918123 (D. Kan. 2022). Thus, although the Court independently considers the pleadings in this case, it notes that many of the arguments raised have been directly addressed by those earlier two cases.

## II.     STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted). A claim is plausible if it is accompanied by sufficient factual content to allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation and citation omitted). In undertaking this analysis, courts accept as true all well-

pleaded allegations in the complaint, though they need not accept legal conclusions. *Id.* Likewise, conclusory statements are not entitled to the presumption of truth. *Id.* at 678-79.

## III.     ANALYSIS

Defendants move to dismiss all claims. Doc. 13. They argue that Plaintiff fails to state any plausible claim for relief against NEER, NEPM, or Soldier Creek.[6]

### A.     Nuisance

#### 1.     NEER and NEPM

Defendants move to dismiss Plaintiff's nuisance claim. Defendants argue that Plaintiff's nuisance claim against NEER and NEPM fails because they are not the owners or operators of the Project. Doc. 14 at 11; *see also* Doc. 5 at ¶ 8 (alleging that Soldier Creek is the entity involved "current operations" of the Project). The Court previously dismissed similar or identical nuisance claims arising out of the Project against certain NextEra entities, including NEER and NEPM, because the Project is owned and operated by Soldier Creek. *See Bloom*, 2022 WL 2918136, at *6-9; *Renne*, 2022 WL 2918123, at *6-10.

Plaintiff does not address this argument other than suggesting that NEER and NEPM can still be subject to personal jurisdiction even though they do not own or operate the Project. *See* Doc. 19 at 14.[7] But whether NEER or NEPM have sufficient minimum contacts with Kansas to

---

[6]   Defendants' motion includes an argument that the Court lacks personal jurisdiction over NEER. Doc. 14 at 6-9. The earlier cases also addressed whether this Court has personal jurisdiction over NEER. *See Bloom*, 2022 WL 2918136, at *4-6; *Renne*, 2022 WL 2918123, at *5-6. In both cases, the Court denied NEER's request to dismiss for lack of personal jurisdiction because of conflicting questions of fact. Neither party meaningfully discusses those rulings nor indicates why a different result is required here. On April 26, Plaintiff filed a motion for leave to file a surreply to supplement the record on this issue based on newly discovered evidence. Doc. 36 at 2-3. In their response, Defendants acknowledge the Court's prior rulings and concede that the allegations in this case are likely sufficient for Plaintiff to make a prima-facie showing of personal jurisdiction under the same reasoning stated in *Bloom* and *Renne*. Doc. 39 at 2. Defendants therefore withdraw the personal-jurisdiction argument asserted in the motion to dismiss. *Id.* at 1. In light of this withdrawal, the Court denies as moot the motion for leave to file a surreply (Doc. 36) and the associated motion for leave to file a corrected exhibit (Doc. 37).

[7]   As noted above, Defendants' arguments regarding personal jurisdiction have been withdrawn.

establish personal jurisdiction is a separate question from whether Plaintiff can sustain a nuisance claim against an entity based on an alleged nuisance that is neither owned nor operated by that entity. Despite the fact that this was also a question in the related cases, *see, e.g.*, *Bloom*, 2022 WL 2918136, at \*6 ("The Court has struggled somewhat to discern precisely the grounds on which Plaintiffs believe they can hold Defendants liable for the conduct about which they complain, especially given that it is undisputed that only Soldier Creek owns and operates the project."), Plaintiff hasn't really provided any answers as to why a different outcome should occur here.

Plaintiff seems to argue that because he has pleaded facts showing that NEER owns and operates its subsidiary Soldier Creek, then there are fact questions as to whether NEER actually owns and operates the wind turbines about which he complains. *See* Doc. 19 at 16-17. But owning Soldier Creek (the entity) and owning the Project (the alleged nuisance) are two separate things. A parent company is not automatically liable for the actions of its subsidiary. "[A] holding or parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity." *Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1362 (10th Cir. 1974); *see also United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law . . . that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries."); *Heslop v. UCB, Inc.*, 175 F. Supp. 2d 1310, 1317 (D. Kan. 2001) ("The fact that one corporation is the parent of another, however, is not sufficient to warrant treating the two corporations as one without a showing that one exercises undue control over the internal affairs of the other."). Plaintiff has not demonstrated why these general principles about corporate entities would not apply here.

Plaintiff also raises the possibility of "vicarious, joint, or alter ego liability" against NEER and NEPM, Doc. 19 at 17, and pleads the conclusory allegation that "[t]he array of Defendant subsidiaries and affiliates form the same joint enterprise related to Plaintiff's claims and render them jointly and severally liable for any and all harm alleged in this Complaint," Doc. 5 at ¶ 9. But he never moves beyond conclusions to meaningfully argue how NEER and NEPM can be held liable for nuisance under any of these theories. This fails to satisfy well-established pleading standards. *See Iqbal*, 556 U.S. at 678-79. Notably, these same conclusory arguments were also rejected in the related cases. *See Bloom*, 2022 WL 2918136, at *6-9; *Renne*, 2022 WL 2918123, at *6-10; *see also Petrowsky v. NextEra Energy Res., LLC*, 2017 WL 2666361, at *6 (D. Kan. 2017) ("Therefore, NextEra cannot be held responsible for the conduct of the NextEra Subsidiaries; it can only be held liable for its direct actions. . . . Petrowsky recognizes that the subsidiaries, and not NextEra, are the ones actually operating the various wind farms.").[8] Plaintiff offers no argument that the Court should change course here.[9]

Accordingly, the Court dismisses Plaintiff's nuisance claim against NEER and NEPM because they do not own or operate the Project.

---

[8]   *Petrowsky* involved a different wind project in Kansas.

[9]   After the Court dismissed several claims in *Renne*, the plaintiff in that case (who is also Plaintiff's counsel in this case) sought leave to amend. *See Renne v. Soldier Creek Wind LLC*, 2022 WL 16551343, at *1 (D. Kan. 2022) ("Renne seeks to re-add claims against two of the NextEra defendants by trying to rectify the pleading deficiencies identified in the court's July 25 order."). The proposed amended complaint in *Renne* is very similar to the amended complaint in this case. The magistrate judge rejected the proposed amendment on futility grounds: "Nowhere does the proposed third amended complaint allege or provide facts from which it could reasonably be inferred that NEER or NEPM currently own or operate the wind farm project so as to impose nuisance liability on them for a wind farm that is undisputedly owned and operated by a separate corporate entity, Soldier Creek." *Id.* at *4.

2.      **Soldier Creek**

Defendants also move to dismiss Plaintiff's nuisance claim under Rule 12(b)(6). Because the Court has already dismissed this claim as to NEER and NEPM, it will consider whether Plaintiff plausibly states a nuisance claim against Soldier Creek.

"Intentional private nuisance is a tort relating to the intentional and unlawful interference with a person's use or enjoyment of his or her land." *Byers v. Snyder*, 237 P.3d 1258, 1268 (Kan. Ct. App. 2010). Nuisance has four elements:

> (1) [T]he defendant acted with the intent of interfering with the use and enjoyment of the land by those entitled to that use; (2) there was some interference with the use and enjoyment of the land of the kind intended, although the amount and extent of that interference may not have been anticipated or intended; (3) the interference that resulted and the physical harm, if any, from that interference proved to be substantial; and (4) the interference was of such a nature, duration, or amount as to constitute unreasonable interference with the use and enjoyment of the land.

*N. Nat. Gas Co. v. L.D. Drilling, Inc.*, 697 F.3d 1259, 1267 (10th Cir. 2012) (citation omitted). "[A] private nuisance action may be brought on a theory of intentional conduct, negligence or strict liability." *Macias v. BNSF Ry. Co.*, 2020 WL 3469680, at *8 (D. Kan. 2020).

Defendants argue that Plaintiff has failed to allege interference with the use and enjoyment of his property. The Court disagrees. The amended complaint explains how the wind turbines near Plaintiff's property disrupt the use and enjoyment of various parts of his home. *See* Doc. 5 at ¶ 20. Nor is the Court convinced that Plaintiff's damages are too conjectural or that his allegations assert only a public nuisance. Further, to the extent Plaintiff alleges a nuisance based on negligence, that is pleaded in the alternative and dismissal is not appropriate at this stage. *See id.* ¶ 35.

The Court therefore denies Defendants' motion to dismiss Plaintiff's nuisance claim as to Soldier Creek.

B.      RICO

Plaintiff asserts a RICO claim against Defendants. RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). To survive a motion to dismiss on a RICO claim, a plaintiff must plausibly allege that the defendant "(1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity." *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1248 (10th Cir. 2016). A pattern of racketeering activity means that a defendant is alleged to have committed two or more predicate acts, which are certain specified state or federal offenses. *In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 336 F. Supp. 3d 1256, 1318-19 (D. Kan. 2018); *Johnson v. Heath*, 56 F.4th 851, 858 (10th Cir. 2022) (stating that "a 'pattern' requires at least two racketeering acts committed within ten years of each other" (quoting 18 U.S.C. § 1961(5))).

Defendants move to dismiss Plaintiff's RICO claim on several grounds. Because it is dispositive of the issue, the Court focuses on whether Plaintiff has plausibly pleaded the existence of pattern of racketeering through predicate acts. *See* Doc. 14 at 22-26.

Plaintiff argues that the amended complaint adequately pleads that Defendants committed mail and wire fraud, the state crime of bribery, and the state crime of criminal disruption of an official meeting. *See* Doc. 19 at 25-26. The Court considers whether these allegations are predicate acts sufficient to support a RICO claim, and if so, whether Plaintiff has pleaded a pattern of racketeering through commission of these acts.

As to mail and wire fraud, the amended complaint alleges that Defendants "made use of mail and wire communications in interstate commerce to falsely convince the residents and local

authorities to believe its towers were a minor annoyance," in violation of 18 U.S.C. § 1341. Doc. 5 at ¶ 40.[10] As Defendants correctly note, a heightened pleading standard applies to allegations of mail or wire fraud. *George*, 833 F.3d at 1254. This means that "plaintiffs must 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Id.* (quoting *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000)). The amended complaint includes none of this information, and therefore fails to state a RICO claim based on the predicate acts of mail or wire fraud.

The other predicate acts alleged are the state crime of bribery under K.S.A. § 21-6001, and the state crime of interference with the conduct of public business by an act of coercion or intimidation under K.S.A. § 21-5922. Plaintiff alleges that "Defendants and other coordinating subsidiaries and affiliates sought, and/or conspired, to interfere with and/or intimidate the city council and/or its individual members, agents, representatives, or proxies by aggressive disruptions and/or intimidation of, and interference with, Corning official business related to limitations on its Project that might adversely affect Defendants' plans." *Id.* ¶ 41. This apparently occurred when Westar hired a Corning city councilman, and then threatened to fire him six months later unless he dropped all opposition to the Project. The city councilman did drop his opposition and resigned his position on the city council, which allowed "Defendants and their allies . . . to fill the open seat with a candidate more friendly to Defendants and the Soldier Creek Project." *Id.* ¶ 42.

As an initial matter, there is some confusion about these alleged predicate acts. Defendants seem to be operating under the impression that the predicate acts are based on federal criminal statutes. *See* Doc. 14 at 23-24. But the amended complaint references state criminal violations. *See*

---

[10]  The amended complaint also states Defendants engaged in "fraud in misrepresenting the nature of [one-sided] adhesion contracts." Doc. 5 at ¶ 40. But Plaintiff does not rely on this allegation as a predicate act in response to the motion to dismiss. *See* Doc. 19 at 25-26. Nor does this allegation meet the heightened pleading standard for claims of fraud outlined above.

Doc. 5 at ¶ 42; *see also* 18 U.S.C. § 1961(1) (stating that "'racketeering activity' means (A) any act or threat involving . . . bribery, extortion . . . which is chargeable under State law and punishable by imprisonment for more than one year"). Moreover, these allegations focus on conduct by a non-party, i.e. Westar. Other than alleging that Westar is Defendants' "partner," it's unclear how Plaintiff attributes Westar's actions against its employee to Defendants. The amended complaint does not address this, and neither do Defendants.[11] Finally, it is unclear how the facts alleged satisfy either the state crime of bribery or the state crime of disruption of a public meeting.[12]

Even assuming that Plaintiff plausibly alleged that Defendants engaged in RICO-eligible predicate acts, the Court agrees with Defendants that Plaintiff has not alleged any facts that would support a pattern of racketeering. For purposes of RICO, a pattern "is defined as criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Wilson v. Landers McLarty Olathe KS, LLC,* 2018 WL 5617832, at *4 (D. Kan. 2018) (internal quotation and citation omitted). A RICO pattern requires that predicate acts "relate to each other and amount to a threat of continued racketeering activity." *Johnson*, 56 F.4th at 858-59; *see also H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989) ("To establish a RICO pattern it must also be shown

---

[11] All Defendants argue is that "Plaintiff plainly fails to allege facts detailing how and specifically the period during when each Defendant committed the predicate acts." Doc. 25 at 12.

[12] This is particularly true as to Plaintiff's claim regarding disruption of a public meeting. Plaintiff cites two subsections of the state criminal statute. The first, K.S.A. § 21-5922(a)(2), criminalizes "knowingly impeding any public official or employee in the lawful performance of duties or activities through the use of restraint, abduction, coercion or intimidation or by force and violence or threat thereof." The second subsection, K.S.A. § 21-5922(a)(4), criminalizes "knowingly impeding, disrupting or hindering the normal proceedings of any meeting . . . by any act of intrusion into the chamber or other areas designated for the use of the body or official conducting such meeting or session, or by any act designed to intimidate, coerce or hinder any member of such body or any official engaged in the performance of duties at such meeting or session." The Court struggles to see any factual basis for this claim in the amended complaint based on conduct of Defendants. But Defendants do not meaningfully argue this point, and thus the Court will assume that Plaintiff has pleaded predicate acts of bribery and disruption of a public meeting.

that the predicates themselves amount to, or that they otherwise constitute a threat of, continuing racketeering activity.").

"Continuity can be either closed or open ended." *Johnson*, 56 F.4th at 859. Predicate acts extending over a substantial period of time may suffice (closed-ended continuity). *Id.* But actions occurring over a few weeks or months with no threat of future conduct are not sufficient. *See H.J. Inc.*, 492 U.S. at 242. A plaintiff may also allege that predicate acts carry a threat of repetition (open-ended continuity). *Johnson*, 56 F.4th at 859-60; *see also Erikson v. Farmers Grp., Inc.*, 151 F. App'x 672, 677-78 (10th Cir. 2005).

Defendants argue that the amended complaint fails to allege any pattern of racketeering or even when the alleged predicate acts were committed. *See* Doc. 14 at 25. Plaintiff responds that the acts alleged "are all part of the same goal, to corruptly put down local opposition through lies, bribery and intimidation" and that "Defendants are on robust notice of what Plaintiff[] claim[s] they did to violate RICO." Doc. 19 at 26-27.

The Court agrees with Defendant that the amended complaint falls short of plausibly alleging a pattern of racketeering sufficient to state a RICO claim. At most, the amended complaint alleges that Defendants' partner Westar threatened a city councilman into supporting the Project. Even if this sufficiently alleges a predicate act by Defendants, it would not establish a pattern of racketeering. At most, Plaintiff has alleged a scheme to sway local officials to support the Project. Even if this was unlawful, a "single scheme to accomplish one discrete goal, directed at a finite group of individuals, with no potential to extend to other persons or entities, rarely will suffice to establish a threat of continuing activity." *Erikson*, 151 F. App'x at 677-78. Further, given that this act was undertaken to get approval for the wind farm—which was apparently given because the wind farm was built—it is unclear what possible future criminal conduct would be at issue. None

is alleged in the amended complaint. *See Johnson*, 56 F.4th at 862 (finding no plausible RICO claim where "the predicates were all similar and amounted to a single, noncomplex scheme with a discrete goal"). In sum, Plaintiff has "not alleged the type of long-term criminal activity against which the RICO statute is aimed." *Erikson*, 151 F. App'x at 678. His RICO claim must be dismissed.[13]

### C.     Civil Conspiracy

Defendants move to dismiss Plaintiff's claim for civil conspiracy under Kansas law for two reasons. First, Defendants contend that, as affiliated corporations, they cannot conspire with themselves. Under Kansas law, "the elements of a civil conspiracy include: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Stoldt v. City of Toronto*, 678 P.2d 153, 161 (Kan. 1984) (internal quotation and citation omitted). A parent company cannot form a conspiracy with its subsidiary. *Pizza Mgmt., Inc. v. Pizza Hut, Inc.*, 737 F. Supp. 1154, 1166 (D. Kan. 1990) ("If a civil conspiracy claim was actionable under these circumstances, the stricter burdens governing the alter ego doctrine and the policy value reflected in those burdens would be readily circumvented."); *see also Vulcan Materials Co. v. Atofina Chems. Inc.*, 355 F. Supp. 2d 1214, 1239 (D. Kan. 2005) ("Generally claims of conspiracy will not lie as to affiliated corporations.").

The amended complaint alleges that NEPM and Soldier Creek are subsidiaries of NEER. Doc. 5 at ¶ 6 ("NEER is the 'higher up' authority from which NEPM and Soldier Creek and other subsidiaries and/or affiliates take direction and seek approval . . . ."). Thus, to the extent Plaintiff

---

[13]   Because Plaintiff's RICO claim fails to allege a pattern of racketeering, the Court does not reach Defendants' other arguments.

alleges that Defendants have formed a civil conspiracy, that claim must fail because they are affiliated entities.

Plaintiff concedes this is the law as stated by the District of Kansas in reliance on the United States Supreme Court. But he "suggests" without support "that the Kansas Supreme Court would go the other way." Doc. 19 at 27. However, this law has been in place for over 30 years. It is also reasonable. As other courts have noted, allowing parent and subsidiary corporations to conspire would transform almost all corporate action into a civil conspiracy. *See Pizza Mgmt., Inc.*, 737 F. Supp. at 1166 ("Where the alleged harm and motives are mostly economic in nature and the overt acts primarily attributable to the wholly owned subsidiary, a civil conspiracy claim in almost all circumstances would also exist against the parent corporation.").

Defendants alternatively argue that Plaintiff has not pleaded "one or more unlawful overt acts." Doc. 14 at 28. Plaintiff responds that the "unlawful act is putting a giant and obnoxious intentional nuisance next to Plaintiff's home." Doc. 19 at 27.[14] To the extent the alleged unlawful act is creating a nuisance, the Court has found that Plaintiff cannot sustain a nuisance claim against NEER or NEPM. "[I]f the plaintiff is unable to maintain an action for the underlying wrong or tort, then he cannot maintain an action for the conspiracy to commit that wrong or tort." *Auld v. Value Place Prop. Mgmt. LLC*, 2010 WL 610690, at *9 (D. Kan. 2010). Thus, the conspiracy claim against NEER and NEPM must likewise be dismissed. *See id.* Although the nuisance claim against Soldier Creek survives, a "corporation is not capable of conspiring with itself." *Id.* Accordingly, the Court dismisses Plaintiff's civil conspiracy claim.

---

[14] Plaintiff's analysis of this claim then transitions to something of a tirade against Defendants, noting that "[l]itigating their victims to death is **part of the tortious action of shoving these wind towers down the throats of local residents** without paying for the privilege." Doc. 19 at 27 (emphasis in original). The Court has already noted that this rhetoric is neither helpful nor welcome. *See Renne*, 2022 WL 2918123, at *9.

D.      Class Claims

Finally, Plaintiff's amended complaint include a section titled "CLASS CLAIMS." Doc. 5 at ¶¶ 52-63. In that section, Plaintiff asserts claims on behalf of a class and subclass who "have suffered harm or damages resulting from liable conduct of any Defendant based on claims made by Plaintiff herein." *Id.* ¶¶ 55-56. Defendants move to strike and dismiss Plaintiff's class claims on grounds that a class could not be certified because the proposed classes are impermissible fail-safe classes, and the Court would have to determine the merits of a person's substantive claim to determine if that person was a class member. Doc. 14 at 28-30.

In response, Plaintiff argues that Defendants' motion is premature and represents "a backdoor attack on certification denial before it is even requested." Doc. 19 at 29. Plaintiff relies on D. Kan. Rule 23.1(b) to argue that disallowing or striking a class claim before a motion for certification is filed is improper. But while class claims may be stricken after a motion for certification, it does not follow that such action is improper at the motion to dismiss stage. To the contrary, where a class could not properly be certified, a court may strike or dismiss class claims at the pleading stage. *See Stubbs v. McDonald's Corp.*, 224 F.R.D. 668, 674 (D. Kan. 2004) ("Federal courts have used motions to strike to test the viability of a class at the earliest pleading stage of the litigation."); *Stacker v. Intellisource, LLC*, 2021 WL 2646444, at *11 (D. Kan. 2021) ("Although Plaintiff has not yet moved for class certification, the court finds as a matter of law that it could not certify Plaintiff's proposed nationwide class action . . . ."); *Linde v. Envision Healthcare Corp.*, 2021 WL 3089214, at *5 (D. Kan. 2021) ("Although motions to strike are generally disfavored, courts can address at the pleading stage legal issues relating to putative class actions."); *Rasnic v. FCA US LLC*, 2017 WL 6406880, at *9 (D. Kan. 2017) ("[D]istrict courts still maintain authority to strike class allegations when the pleadings present 'plain' issues that will

19

prevent class certification."); *Craggs v. Fast Lane Car Wash & Lube, L.L.C.*, 402 F. Supp. 3d 605, 614 (W.D. Mo. 2019) ("Sometimes the issues are plain enough from the pleadings . . . , in which case the district court can determine whether or not a class should be certified at the pleading stage without the benefit of a motion to certify." (internal quotation and citation omitted)).[15]

Defendants seek to dismiss Plaintiff's class claims because the proposed classes are impermissible fail-safe classes. A fail-safe class is one in which determining membership turns on the merits of the individual class members' claims. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012); *Randleman v. Fid. Nat. Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011); *Ford v. TD Ameritrade Holding Corp.*, 995 F.3d 616, 624 (8th Cir. 2021); *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 2020 WL 1180550, at *31 n.33 (D. Kan. 2020); *Craggs*, 402 F. Supp. 3d at 614; *Cashatt v. Ford Motor Co.*, 2021 WL 1140227, at *3 (W.D. Wash. 2021).

There are two problems with fail-safe classes. First, "if the only members of fail-safe classes are those who have viable claims on the merits, then class members either win or, by virtue of losing, are defined out of the class, escaping the bars of res judicata and collateral estoppel." *In re White*, 64 F.4th 302, 313 (D.C. Cir. 2023); *see also Messner*, 669 F.3d at 825 ("Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment."); *Randleman*, 646 F.3d at 352 (same); *Ford*, 995 F.3d at 624 (same).

The second problem is that it is difficult—if not impossible—to determine class membership early on in the case. *White*, 64 F.4th at 313. "The proposed class is untenable because

---

[15] The Court struck class allegations in *Renne*, albeit on different legal grounds than are asserted here. *Renne*, 2022 WL 2918123, at *11 ("Accordingly, as the Court found in *Stacker*, the appropriate action is striking the class claims because the class could not be certified.").

the court would have to conduct an individual inquiry regarding the merits of each proposed plaintiff's claim in order to determine class membership." *Mike v. Safeco Ins. Co. of Am.*, 223 F.R.D. 50, 53 (D. Conn. 2004). Not only does this complicate identifying and certifying a class, but it creates significant issues in even managing the case as a class action. *See Orduno v. Pietrzak*, 932 F.3d 710, 716-17 (8th Cir. 2019) ("A fail-safe class is also unmanageable . . . because the court cannot know to whom notice should be sent.").

The Court agrees with Defendants that the class definitions stated in the complaint are fail-safe class definitions. They define the classes only as property owners or residents who have suffered harm or damages for which Defendants are liable. *See* Doc. 5 at ¶¶ 55-56. Plaintiff states in his response that the class definition delineates "membership based on a three-mile zone surrounding Corning, Kansas that is not tied to the claims' merits and, thus, not fail-safe." Doc. 19 at 30. But that leaves out the remainder of the definition, which explicitly ties membership to those who have viable claims for which Defendants are liable. It is unclear how such a class could ever be certified. Not only would it be difficult to identify potential class members, but the claims of each individual class member would have to be separately evaluated on the merits before the Court could even decide whether they were appropriate class members.[16]

Plaintiff argues that the class definitions "serve the purpose to adequately give defendants adequate notice." *Id.* The Court disagrees that the proposed class definition gives Defendants any notice, as it is not even limited to any specific substantive claim in the amended complaint. Plaintiff

---

[16]   In their reply brief, Defendants argue that liability on a nuisance claim could not be determined on a class-wide basis because such a claim would require a highly individualized analysis. Doc. 25 at 15. Arguments raised for the first time in a reply brief are not proper, and thus the Court does not consider this argument. But the Court does note that, per this order, the only remaining substantive claim in the case is a nuisance claim against Soldier Creek. And there would seem to be difficulties in maintaining a class-wide private nuisance claim. *See Burdette v. Vigindustries, Inc.*, 2012 WL 405621, at *9 (D. Kan. 2012) ("For all of these reasons, the Court finds that the common questions surrounding Plaintiffs' prima facie nuisance case would not predominate over the individual issues presented by the potential class members and that the class action is not a superior method for adjudicating this claim.").

also argues that the "definition can easily be refined and improved" and that amendment should be allowed instead of the "sledgehammer of dismissal." *Id.*

The various circuits to have considered fail-safe classes have reached different conclusions as to how they should be handled, i.e. whether they are permissible in some instances, impermissible but not an independent bar to certification, or whether they are both impermissible and independent bars to certifications. *See White*, 64 F.4th at 309-10.[17] Courts can also allow refinement of class definitions to address these issues. *See id.* at 315. Ultimately, however, the Court finds that the class definitions are problematic and should be stricken and that further amendment is not warranted in this case.

Plaintiff provides no suggestions as to how the class definition could be improved or what other class he has in mind. Additionally, the class allegations were already amended once. *See* Doc. 1. The amended complaint was filed only after the Court ruled on the motions to dismiss in the *Renne* and *Bloom* cases.[18] The complaints in the *Renne* and *Bloom* cases were also amended several times to try to avoid dismissal or address shortcomings. *See, e.g.*, *Renne*, 2022 WL 16551343, at *6 ("[T]his case has been bogged down for nearly 18 months with an ongoing cycle of pleading, motions to dismiss, repleading, more motions to dismiss, and now yet another futile attempt to replead."). Plaintiff was also party to another attempted class action case in the District of Columbia against many of the same defendants. That case was dismissed on jurisdictional grounds. *See Mattwaoshshe v. United States*, 557 F. Supp. 3d 28, 44 (D.D.C. 2021).

In sum, the Court has little confidence that allowing further amendment of the pleadings will be fruitful. It will mostly likely result in yet another round of motions to dismiss, which will

---

[17]   It doesn't appear that the Tenth Circuit has addressed fail-safe classes.

[18]   As noted above, the *Renne* case included a class action allegation against Defendants, which although based on a different legal theory, arose out of the Project. *See Renne*, 2022 WL 2918123, at *4.

delay this case that has already been pending for a year with little progress.[19] Accordingly, the Court strikes and dismisses Plaintiff's class claims.

## IV.    CONCLUSION

THE COURT THEREFORE ORDERS that Defendants' Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction and Failure to State a Claim (Doc. 13) is GRANTED IN PART AND DENIED IN PART. The Court dismisses all claims against NEER and NEPM for failure to state a claim. The Court likewise dismisses the RICO, civil conspiracy, and class claims against Soldier Creek. The sole surviving claim is a claim for nuisance against Soldier Creek.

THE COURT FURTHER ORDERS that Plaintiff's Motion for Leave to File Surreply Brief (Doc. 36) and Motion for Leave to File Corrected Exhibit (Doc. 37) are DENIED AS MOOT because Defendants have withdrawn the personal-jurisdiction argument addressed in the proposed surreply.

IT IS SO ORDERED.

Dated: May 17, 2023                    /s/ *Holly L. Teeter*
                                       HOLLY L. TEETER
                                       UNITED STATES DISTRICT JUDGE

---

[19] For similar reasons, the Court declines Plaintiff's cursory request to allow amendment or to certify any issue as final for purposes of appeal. *See* Doc. 19 at 1 n.1. This is a passing request in a footnote and does not satisfy or discuss any applicable standard for such relief.