IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JUSTIN STALLBAUMER,

    Plaintiff,

    v.

NEXTERA ENERGY RESOURCES, LLC, et al.,

    Defendants.

Case No.: 22-cv-04031-HLT-ADM

**MEMORANDUM AND ORDER**

    This case arises out of the construction of wind turbines in Kansas. Plaintiff Justin Stallbaumer asserts a nuisance claim against Defendant Soldier Creek. Other claims and defendants have been dismissed. Plaintiff filed a motion to amend to re-assert certain dismissed claims, but the magistrate judge denied the motion. Plaintiff now seeks review of that order. Doc. 71. The Court employs a de novo review and concludes that: (1) Plaintiff satisfies the good-cause standard under Rule 16 but (2) the proposed amendment is both untimely and futile under Rule 15. The objection is overruled. Leave to amend is denied.

**I.    BACKGROUND**

    **A.    Pleading History and Motion to Dismiss**

    The Court starts with a history of this case before getting into the current motion. This case is related to two others pending in the District of Kansas: *Renne v. NextEra Energy, Inc. et al*, Case No. 5:21-cv-04032-HLT-ADM (D. Kan.), and *Bloom et al v. NextEra Energy, Inc. et al*, Case No. 5:21-cv-04058-HLT-ADM (D. Kan.).[1] *Renne* and *Bloom* have generally proceeded together,

---

[1] Cites to docket entries in this case will be to "Doc. __." Any cites to docket entries in the other cases will be designated with the respective case name.

though none of the cases are formally consolidated. This case involves the same issues but was filed later than the others. The magistrate judge recently issued identical amended scheduling orders in all three cases to align the deadlines.

Plaintiff initially filed a complaint in May 2022. Doc. 1. Following a ruling on motions to dismiss in *Renne* and *Bloom*, Plaintiff filed an amended complaint in this case. Doc. 5. The amended complaint named Soldier Creek Wind, LLC, NextEra Energy Resources ("NEER"), and NextEra Energy Project Management ("NEPM") as Defendants. Defendants subsequently moved to dismiss. On May 17, 2023, the Court granted in part and denied in part the motion to dismiss. Doc. 40.[2] Specifically, the Court dismissed NEER and NEPM for failure to state a claim and all other claims except a nuisance claim against Soldier Creek. *Id.* at 23. The Court dismissed NEER and NEPM because Plaintiff had failed to show how he could hold those entities liable for a nuisance that is owned by Soldier Creek—an issue also addressed in greater detail in the orders in *Renne* and *Bloom* in 2022. *See id.* at 9-11; *see also Renne*, Doc. 56 at 11-18; *Bloom*, Doc. 63 at 11-17.

In those orders in *Renne* and *Bloom*, the Court stated it "struggled somewhat to discern precisely the grounds on which Plaintiff believes he can hold [the NextEra] Defendants liable for the conduct about which he complains, especially given that it is undisputed that only Soldier Creek is the owner and operator of the project." *See, e.g.*, *Renne*, Doc. 56. at 12. Although the NextEra Defendants have a parent-subsidiary relationship with Soldier Creek, they still have a separate corporate existence. *Id.* Plaintiff did not allege they are alter egos or that piercing the corporate veil is necessary. *Id.* at 13. Although the plaintiffs in *Renne* and *Bloom* argued that they

---

[2] In conjunction with the motion to dismiss, Plaintiff sought leave to file a surreply addressing a personal-jurisdiction argument raised by NEER. Doc. 36-37. NEER subsequently withdrew their arguments about personal jurisdiction. Doc. 39. In ruling on the motion to dismiss, the Court found the proposed surreply was moot because NEER had withdrawn its argument that it was not subject to personal jurisdiction. Doc. 40 at 9 n.6.

2

were alleging joint and several liability, or a joint venture or common enterprise, the Court found that there were no facts alleged to support those legal conclusions. *Id.* at 13-14. Finally, to the extent Plaintiff alleged that the NextEra Defendants are directly liable based on their involvement in the development and construction of the wind farm, there was no explanation as to "how their involvement at some point in the construction of the wind turbines renders them directly liable for nuisance under Kansas law." *Id.* at 16. Ultimately, in this case and in *Renne* and *Bloom*, the only surviving claim after the motions to dismiss were decided was a nuisance claim, and the only remaining defendant was Soldier Creek, who both parties acknowledge owns and operates the project. *See* Doc. 40 at 10-12, 23; *Renne*, Doc. 56 at 28; *Bloom*, Doc. 63 at 23.[3]

Discovery in this case began in November 2022. Doc 10; Doc 18; *see* also Doc. 57 at 5. The scheduling order set a deadline for motions to amend of June 30, 2023. Doc. 43 at 2.

### B. Motion to Amend

On June 30, 2023, Plaintiff filed a motion to amend the complaint. Doc. 46. The magistrate judge struck that motion because it violated the protective order, *see* Doc. 57 at 3, and Plaintiff re-filed the motion on July 3, Doc. 49. The motion to amend was substantially similar to simultaneous motions filed in *Renne* and *Bloom*. Plaintiff again sought to re-add NEER and NEPM to the case. He argued that new evidence suggested "both NEER and NEPM are both the current owner and

---

[3] After the Court dismissed most of the parties and claims in *Renne* and *Bloom*, the plaintiffs in those cases filed motions to amend, seeking to re-assert the dismissed claims. *See Renne*, Doc. 60; *Bloom*, Doc. 67. This was around the same time Plaintiff filed an amended complaint as of right in this case. Doc. 5. The magistrate judge denied leave to amend in both *Renne* and *Bloom* on grounds of futility and undue delay to the extent they sought to add back in the nuisance claims against NEER and NEPM. *Renne*, Doc. 67; *Bloom*, Doc. 75. On the issue of futility, the magistrate judge found the proposed amendments did not address the Court's questions about how those plaintiffs intended to hold NEER and NEPM liable for nuisance for a project it does not own, even considering the allegations that NEER and NEPM employees were involved in the development of the project. The magistrate judge also agreed the plaintiffs had unduly delayed in seeking leave to amend. Specifically, all the information relied on by the plaintiffs were known to them well before they sought amendment. No explanation for the delay was given. The magistrate judge also noted that the cases had been "bogged down for nearly 18 months with an ongoing cycle of pleading, motions to dismiss, repleading, more motions to dismiss, and now yet another futile attempt to replead." *Renne*, Doc. 67 at 11-12.

operator of the Project itself and partially and jointly, if not primarily, liable for causing the nuisance central to Plaintiff's claims." Doc. 49 at 1. Plaintiff acknowledged that the "motion is being filed after the date in the Scheduling Order for amending" but he contended that "the definitive nature of the new evidence is compelling and should be allowed adjudication on the merits." *Id.* at 2 n.3. This new evidence was that NEER and NEPM had recently withdrawn certain arguments related to personal jurisdiction made in the motion to dismiss, that a NEER employee had made relevant statements at a county commissioners' meeting, and that some emails received in discovery justified amendment. *Id.* at 9-12. Plaintiff contended that this new evidence was sufficient to render NEER and NEPM potentially directly liable for nuisance, though he did not cite any authority on this point. *See id.* at 14-15.

The magistrate judge denied the motion based on undue delay and futility under Rule 15. Doc. 57 at 3. As an initial matter, she noted that the scheduling order deadline had passed. But the delay in missing that deadline was only due the fact that the magistrate judge struck the initial motion, which Plaintiff filed within the deadline a few days earlier, for not complying with the protective order. *Id.* at 4. She found Plaintiff had otherwise acted diligently under Rule 16. *Id.*

However, the magistrate judge found Plaintiff had not satisfied Rule 15. *Id.* First, Plaintiff unduly delayed in seeking leave to amend. Orders in *Renne* and *Bloom* put Plaintiff on notice about the deficiencies in this case from the very start. Discovery had opened in November 2022, giving ample time for Plaintiff to address those issues. The new evidence relied on by Plaintiff in seeking amendment was known as early as April 2023. *Id.* at 5-6. And even though the Court ruled on the motion to dismiss in this case in May 2023—again identifying shortcomings in Plaintiff's claims—Plaintiff still waited more than a month to seek amendment. *Id.*

4

The magistrate judge also found amendment would be futile. *Id.* She found the proposed amended pleading did not plausibly allege that NEER or NEPM are the owner and operators of the project, nor had he demonstrated a basis for joint and several liability, the existence of a joint venture or common enterprise, or any grounds to hold NEER and NEPM directly liable for nuisance. *Id.* The magistrate judge found that the NEER employee's statements at the commissioners' meeting did not establish that NEER owns the project because they did not directly address the project. *Id.* at 6-7. Nor was she persuaded that NEER and NEPM had conceded that they own and operate the project when they withdrew arguments following the surreply. *Id.* at 7. The withdrawn arguments related instead to personal jurisdiction. *Id.*

In sum, the magistrate judge found Plaintiff just repeated arguments previously rejected and failed to explain how he could hold NEER and NEPM liable for an alleged nuisance they don't own or operate. *Id.* at 7-8. The proposed amendment was therefore futile. *Id.* at 8.

Plaintiff now moves for review of the magistrate judge's order denying leave to amend. Doc. 71.[4]

## II. STANDARD

There is some disagreement between the parties about whether the underlying ruling on the motion to amend in this case was dispositive or non-dispositive. *See* Doc. 71 at 3 ("The standard of review in this objection is not simple or easy to determine."); Doc. 86 at 2 (discussing that different standards may be appropriate depending on the reasoning for the ruling). Whether a ruling is dispositive determines the standard applied when a district judge reviews a magistrate judge's decision. *See* Fed. R. Civ. P. 72. Typically, a magistrate judge's ruling on a motion to amend is

---

[4] Plaintiffs in *Renne*, *Bloom*, and *Stallbaumer* are all represented by the same counsel, and all have filed similar motions for review.

5

considered non-dispositive. But it may be considered dispositive where it has the effect of removing a claim. *Pedro v. Armour Swift-Eckrich*, 118 F. Supp. 2d 1155, 1157 (D. Kan. 2000). Denying leave to amend on futility grounds is often considered dispositive. *Id.*

Here, the magistrate judge denied leave to amend based on undue delay and futility. Given the futility ruling, and particularly given that the issues raised in the instant motion have been repeatedly raised in this case, the undersigned will construe the underlying ruling as dispositive, and will employ de novo review.[5]

Rule 72(b) allows a party to file objections to dispositive rulings, and "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). In a de novo review, the Court makes an independent determination of the issues. *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988). "The district judge is free to follow a magistrate's recommendation or wholly to ignore it, or, if he is not satisfied, he may conduct the review in whole or in part anew." *Id.* (internal brackets, quotation, and citation omitted).

## III.   ANALYSIS

Plaintiff relies primarily on three points to argue that he should be permitted to amend the complaint and re-assert his nuisance claim against NEER and NEPM. First, he argues that ESI discovery shows that NEER and NEPM representatives were extensively, and perhaps solely, responsible for the development, placement, and construction of the windmills about which Plaintiff complains. Doc. 71 at 5. Second, he argues that statements made by a NEER representative at a county commissioners' meeting in April 2023 suggest that NEER does consider

---

[5] Review of non-dispositive rulings uses a clearly erroneous or contrary to law standard. *See* Fed. R. Civ. P 72(a). Given that this is generally a more deferential standard than de novo review, the Court notes that it would reach the same decision under either standard.

itself as the owner of all its projects in Kansas. *Id.* at 6-7. Third, Plaintiff argues that the withdrawal of certain arguments in this case should be construed as a concession that NEER and NEPM do own the project in question. *Id.* at 7-8. The Court considers these arguments in the context of Rule 16 and Rule 15.

### A. Rule 16

The Tenth Circuit has held that "parties seeking to amend their complaints after a scheduling order deadline must establish good cause for doing so." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir. 2014). This requires a showing that the deadline could not have been met despite diligent efforts. *Id.* at 1240. This may be shown by pointing to newly discovered evidence. *Id.* If a plaintiff fails to meet the Rule 16 standard, a court is within its discretion to deny leave to amend. *See id.* at 1241.

Here, the scheduling order set a June 30, 2023 deadline for motions to amend. Doc. 43 at 2. Plaintiff filed the motion at issue on July 3, 2023. But this was only after the magistrate judge struck an earlier motion, which was filed by the deadline, for non-compliance with the protective order. In light of this, the magistrate judge found that Plaintiff acted with diligence in trying to meet the deadline. Doc. 57 at 3-4. The undersigned agrees, as does Defendant, *see* Doc. 86 at 5-6. The Court will therefore proceed to consider whether Plaintiff satisfies Rule 15.

### B. Rule 15

Rule 15(a)(2) states that successive amendments to pleadings may be made "only with the opposing party's written consent or the court's leave," and a "court should freely give leave when justice so requires." Whether to grant leave to amend is discretionary. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). Factors considered are undue delay, bad faith, failure to

cure deficiencies in previous amendments, undue prejudice to the opposing party, and futility of amendment. *See id.*

### 1. Undue Delay

Although the magistrate judge found that Plaintiff had satisfied Rule 16's requirement of diligently meeting the scheduling order deadline, she nevertheless found that the proposed amendment was unduly delayed under Rule 15. Doc. 57 at 5-6. She noted that Plaintiff's counsel was aware of the deficiencies in the pleadings since the Court ruled on the motions to dismiss in *Renne* and *Bloom* in July 2022. *Id.*[6] Similarly, the magistrate judge denied requests to amend in those cases in October and November 2022, citing the same problems. *Id.* Discovery had been ongoing for more than seven months in this case before Plaintiff filed for leave to amend. *Id.* And the "new evidence" cited by Plaintiff had been discovered in April 2023. But Plaintiff still waited until the end of June to seek amendment.

The undersigned agrees with the magistrate judge that these circumstances support a finding of undue delay. Plaintiff has been on notice throughout almost the entire duration of this case about the problems with his claims against NEER and NEPM. There is no acceptable explanation for waiting until the last possible day to seek to rectify those issues. *See Minter*, 451 F.3d at 1206 (stating that delay is "undue" where there is no adequate explanation for the delay).

Plaintiff's argument to the contrary is unavailing. Plaintiff argues he was delayed in seeking amendment because of the timing of Defendant's ESI production. Doc. 71 at 9-12. Plaintiff states that Defendant began producing documents in February 2023 and completed production on May 31, 2023. *Id.* at 10. But Plaintiff apparently did not begin reviewing documents until June.

---

[6]  Similar arguments were also raised in this case in the motion to dismiss, and Plaintiff still sought to stand on his pleadings rather than seek amendment at that time.

*See id.* at 10-11; *see also* Doc. 171-6 at 1-2. While this may have been Plaintiff's prerogative and a cost-saving measure, it does not justify the delay. Further, Plaintiff highlights the withdrawal of certain arguments related to the surreply on May 4, 2023, *see* Doc. 39, and statements made at the April 2023 commissioners' meeting. But Plaintiff still waited almost two months before seeking leave to amend. And apparently neither of these events was significant enough to prompt Plaintiff to begin reviewing ESI sooner.

Under these facts, the Court finds that Plaintiff unduly delayed in seeking amendment and leave should be denied under Rule 15.

### 2. Futility

The Court may also deny leave to amend based on futility. "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Panicker v. State Dep't of Agric.*, 498 F. App'x 755, 757 (10th Cir. 2012) (internal quotation and citation omitted).

In the motion for review, Plaintiff argues that newly discovered evidence makes his proposed amendment not futile. The ostensible new evidence relied on by Plaintiff is: (1) emails showing the involvement of NEER and NEPM in the development and construction of the project, Doc. 71 at 5; (2) statements by a NEER representative at the April 2023 commissioners' meeting "concerning how NEER views its control and ownership over all of its subsidiaries' projects in Kansas," *id.* at 6; and (3) the withdrawal of certain arguments by NEER and NEPM in response to the surreply, *id.* at 7. Plaintiff argues this evidence shows that Soldier Creek did not have any employees during the "critical periods relevant to the complaint[]" and that all of the work was directed and performed by NEER and NEPM employees. *Id.* at 3. According to Plaintiff, this "now proves . . . that NEER and NEPM are responsible for undertaking all conceivable actions that resulted in these nuisances being created and located near Plaintiffs' properties and are partially

and/or jointly liable for it." *Id.*; *see also id.* at 5 ("Newly discovered evidence proves that both NEER and NEPM employees undertook that conduct prior to the Project becoming operational and bear partial and/or joint liability, as Plaintiffs have alleged from the beginning.").

As discussed above, the Court previously dismissed NEER and NEPM because the only surviving claim was a nuisance claim, and it was undisputed that Soldier Creek is the sole owner and operator of the wind farm, i.e. the alleged nuisance. *See* Doc. 56 at 9-11. Plaintiff had not identified any valid basis to hold NEER and NEPM liable for nuisance under those circumstances. *Id.* The Court rejected Plaintiff's suggestions that "vicarious, joint, or alter ego liability" may exist against NEER and NEPM. *Id.* at 11. Nor had Plaintiff addressed the shortcomings identified in *Renne* and *Bloom*, which also existed in this case. *Id.*

After considering each category of new evidence, the Court finds that none of the categories of new evidence cited by Plaintiff would change this analysis.

### a. ESI

Plaintiff first points to emails that he says show NEER and NEPM's involvement in the project. The Court has reviewed the emails attached to the proposed amended complaint. *See* Doc. 54 at 4. Plaintiff says these emails show that NEER employees were heavily involved "over actions like tower placement, construction, and foreknowledge of setback non-compliance at the center of the claims in this case." *Id.* But NEER and NEPM's involvement in the project has been alleged from the start. It is not a new allegation. The problem has been Plaintiff's failure to explain how that involvement makes NEER or NEPM liable for nuisance, which is the only claim left, where it has been acknowledged by both sides that Soldier Creek is the owner and operator of the project. Perhaps there is a legal theory that would make a nuisance claim against a non-owner of an alleged

10

nuisance viable. But despite the Court's repeated questioning on this point, Plaintiff has not identified or supported what that theory is.

The Court finds itself back at the same impasse.[7] Plaintiff states that the new evidence cited shows that NEER and NEPM "are partially and/or jointly liable" for the project. Doc. 71 at 3. But, again, this is a legal conclusion without any supporting authority. The Court understands Plaintiff's emphatic position to be that NEER and NEPM had a significant hand in building the wind farm. But they do not own it now, and Plaintiff has yet to explain how NEER and NEPM are liable for an alleged nuisance they do not own or operate.

### b. Statements at Commissioners' Meeting

Plaintiff also relies on statements by a NEER representative at a county commissioners' meeting in April 2023. The Court has reviewed those statements. The first exchange was discussing NEER or NEPM representatives going onto property without authorization and damaging fields, and whether they would take responsibility for that. Doc. 54 at 5-6. That's not at issue here. The NEER representative also explained that the projects are built and then held by a separate entity. *Id.* at 6. That is precisely what occurred here with Soldier Creek. The NEER representative, speaking somewhat generally, then says he doesn't think there is "inability to pierce the corporate veil." *Id.* Even to the extent this statement could be read to encompass all NextEra projects in Kansas, including the Soldier Creek project, it is not a reasonable inference to conclude that the separate entity of Soldier Creek can or should be disregarded in this case. Nor can it be reasonably construed as a concession by NEER and NEPM that they can be sued for nuisance with

---

[7] Independent of the reasons cited throughout this order, denial of leave to amend would therefore also be appropriate because Plaintiff has failed to cure deficiencies previously identified by the Court. *See Minter*, 451 F.3d at 1204.

regard to the project owned and operated by Soldier Creek. Whether and to what extent a party can pierce a corporate veil is a legal issue, and Plaintiff offers no analysis on that point.

Plaintiff also contends that statements later made at the meeting that NEER oversees projects in Kansas means conclusively that NEER in actuality owns the project, and that NEPM and Soldier Creek are alter egos of NEER. The Court disagrees that these statements go that far. Whether an entity is an alter ego of another is a legal conclusion. The statements of a NEER employee at a commissioner's meeting apparently convened to discuss a separate project does not establish that NEPM and Soldier Creek are alter egos of NEER in this case as to this project. And as discussed above, the involvement of NEER or NEPM and the fact that Soldier Creek is the entity created to own and operate the project has been alleged since the start of this case. The testimony at the commissioners' meeting, however, does not address the questions that have been raised by the Court in the ruling on the motion to dismiss. *See* Doc. 40 at 9-11.

### c. Withdrawal of Arguments in Response to Surreply

The final piece of evidence Plaintiff relies on to argue amendment is not futile is NEER and NEPM's withdrawal of certain arguments in response to his surreply motion. Plaintiff construes that withdrawal as a concession of sorts by NEER and NEPM that they are in fact owners and operators of the wind farm. *See* Doc. 49 at 3 ("In abruptly abandoning nearly two years worth of repeated assurances and emphatic arguments to this Court, NEER or NEPM abandoned oft repeated and heavily relied upon false assertions that they did not 'own or operate' the Project . . . .").

The Court disagrees that NEER and NEPM made any such concession. The withdrawn arguments related to personal jurisdiction. *See* Doc. 40 at 9 n.6. NEER and NEPM explicitly did not withdraw any arguments under Rule 12(b)(6), including their argument that they could not be

liable for nuisance because they are not the owner and operator of the property. Doc. 39 at 2. Plaintiff's argument on this point does not overcome futility.

## IV. CONCLUSION

The Court concludes that leave to amend should be denied for failure to comply with Rule 15, particularly as to undue delay and futility.

THE COURT THEREFORE ORDERS that Plaintiff's Objection or Appeal of the Magistrate Judge's Order (Doc. 71) is OVERRULED. The Motion to Amend (Doc. 49) is DENIED.

IT IS SO ORDERED.

Dated: September 25, 2023                /s/  Holly L. Teeter
                                         HOLLY L. TEETER
                                         UNITED STATES DISTRICT JUDGE